J. Nelson Thomas (to be admitted *pro hac vice*)
Michael J. Lingle (to be admitted *pro hac vice*)
Conor T. Tallet (to be admitted *pro hac vice*)
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
ctallet@theemploymentattorneys.com

Adam B. Wolf (Bar No. 215914)
PEIFFER WOLF CARR KANE & CONWAY,
A PROFESSIONAL LAWCORPORATION
5042 Wilshire Blvd., No. 304
Los Angeles, CA  90036
Telephone: (415) 766-3545
awolf@peifferwolf.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF WALLACE, *individually and as a representative of the class,*<br><br>*Plaintiff,*<br><br>*v.*<br><br>ADMEDIARY, LLC, ARTHUR WELCH, & PETER KLEIN,<br><br>*Defendants.* | Civil Action No. ___2:20-cv-9308___<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violation of 47 U.S.C. §§ 227 *et  seq.* (Telephone Consumer Protection Act)<br><br>(2) Violation of Texas Business & Commerce Code §§ 305, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JEFF WALLACE ("Plaintiff"), on behalf of himself and the proposed nationwide class ("Class") and Texas Subclass ("Subclass" or "Texas Subclass"), by and through his attorneys, brings this class action complaint against ADMEDIARY, LLC, ARTHUR WELCH, and PETER KLEIN (collectively, "Admediary" or "Defendants").

## INTRODUCTION

1.      This putative class action is brought by Plaintiff Wallace on behalf of himself and all others who received unsolicited and unconsented-to advertisement and/or telemarketing text messages to their mobile phones sent by Defendants through the use of an automatic telephone dialing system ("ATDS") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.*, and Texas Business and Commerce Code § 305, *et seq.*

2.      Admediary is a "Leader in Digital Performance Marketing" with a focus on lead generation through its 30-plus owned and operated "websites across almost a dozen industry verticals," including "financial services, legal, automotive, credit cards, business networking, debt, home services, senior care, education, insurance, and more."

3.      According to its website, Admediary generates these leads by implementing aggressive marketing campaigns "to drive tens of thousands of new leads *per day* through channels such as . . . text messaging."

4.      As one example, Admediary owns and operates www.lawsuit-winning.com ("Lawsuit Winning"), which is one of Admediary's many lead generation websites just within the legal services sector generating seven to ten thousand leads per month.

5.      Admediary's lead generation campaigns within the legal sector provide client leads to law firms, for a price. These client leads generated by Admediary "come with an extensive amount of information to help [the law firm] discuss the case quickly with [their] new client." Admediary also provides the law firms with "information or data points . . . that [the law firm] can use to narrow the exact case [it] wants to pursue and pay [Admediary] for."

6.     Plaintiff Wallace's allegations stem from an unsolicited and unconsented-to text message he received from Defendants encouraging the purchase of legal services and advertising the commercial availability of legal services for victims abused by the Boy Scouts of America in a last-ditch effort by Defendants to generate new business leads for law firms prior to a bankruptcy court's November 16, 2020 deadline to file a claim against the Boy Scouts of America for victims of sexual abuse.

7.     Defendants' unsolicited and unconsented-to text message provided Plaintiff Wallace with a URL link to Admediary's Lawsuit Winning website "devoted to helping consumers who may have been injured by prescription medications, financial fraud, automobile recalls, and various other issues where they could seek legal representation."

8.     Plaintiff is not the only one to receive these unsolicited and unconsented-to text messages from Defendants. In fact, as discussed herein, numerous other Class and Subclass members have complained of receiving virtually identical text messages often received at the same dates and times, or close in proximation, as other recipients, which further confirms Defendants' utilization of an ATDS to send unsolicited text messages *en masse* to thousands of recipients at once across the United States of America and the State of Texas without first obtaining prior express written consent or prior express consent of the recipients.

9.     Given Admediary's position as a "Leader in Digital Performance Marketing" and Defendants Klein and Welch's at least 20 and 15 years of marketing experience, respectively, Defendants were well aware of their obligations under the TCPA and knowingly and willfully violated the TCPA by sending Plaintiff and Class members unsolicited text messages through the use of an ATDS without obtaining the prior express written or prior express consent from recipients as required under the TCPA.

10.     Likewise, Defendants were well aware of their obligations under Texas Business and Commerce Code and knowingly and intentionally violated the Code by sending Plaintiff and the Texas Subclass members unsolicited text messages through the

use of an ATDS without obtaining the prior express written or prior express consent of recipients.

11.     As such, Defendants are liable to Plaintiff, the Class members, and the Texas Subclass members for treble damages for each and every unsolicited and unconsented-to text message sent to Plaintiff, the Class, and the Texas Subclass.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) since the claim arises out of a common nucleus of operative fact and is so related to Plaintiff's TCPA claim that "they form part of the same case or controversy under Article III of the United States Constitution."

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in and maintain their principal place of business within this district. Alternatively, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

*Plaintiff Wallace*

15.     Plaintiff Jeff Wallace is a citizen of the State of Texas.

*Defendant Admediary, LLC*

16.     Defendant Admediary is a California limited liability company with its principal place of business located at 27943 Smyth Drive, Valencia, CA 91355.

17.     Defendant Admediary is a self-proclaimed "leader in digital performance marketing" with a focus on lead generation.

18.     According to its website, Admediary "owns and operates over 30 exclusive websites across almost a dozen industry verticals," including Lawsuit Winning, dedicated to generating client leads within the legal sector.

19.     In addition to Lawsuit Winning, Defendant Admediary uses over 30 other owned and operated websites to generate business leads across numerous industries such as "financial services, legal, automotive, credit cards, business networking, debt, home services, senior care, education, insurance, and more."

20.     Defendant Admediary generates "tens of thousands of new leads per day through channels such as . . . text messaging."

21.     Accordingly, Defendant Admediary is liable under the TCPA and Texas Business and Commerce Code for sending unsolicited and unconsented-to text messages to Plaintiff, the Class members, and the Texas Subclass members.

***Defendant Welch***

22.     According to Admediary's website, Defendant Welch is the "CTO and a co-founder" of Admediary.

23.     Defendant Welch is involved in Admediary's lead generation business, including text messaging campaigns.

24.     For example, in a 2017 press release, Defendant Welch praised the release of Amediary's "new SiteROI technology to increase performance results for their clients[,]" which Admediary planned to leverage on its "core sites" such as "Lawsuit Winning." *See Admediary Launches New SiteROI Technology*, PR Newswire (Aug. 21, 2017), https://www.prnewswire.com/news-releases/admediary-launches-new-siteroi-technology-300506602.html.

25.     Further, Defendant Welch is listed as the agent for service of process for Defendant Admediary, LLC and appears on corporate filings with the State of California.

26.     Accordingly, Defendant Welch is liable under the TCPA and Texas Business and Commerce Code for sending unsolicited and unconsented-to text messages to Plaintiff, the Class members, and the Texas Subclass members.

*Defendant Klein*

27.     According to Admediary's website, Defendant Klein is the "President & COO of Admediary, as well as a co-founder" along with Defendant Welch.

28.     Defendant Klein is also involved in Admediary's lead generation business, including text messaging campaigns.

29.     For example, Defendant Klein has also praised Admediary's new "SiteROI technology" used to increase leads in the Admediary's "core verticals such as . . . Mass Tort[.]" *See id.*

30.     Accordingly, Defendant Klein is liable under the TCPA and Texas Business and Commerce Code for sending unsolicited and unconsented-to text messages to Plaintiff, the Class members, and the Texas Subclass members.

## FACTS

*The Telephone Consumer Protection Act*

31.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the prior express consent of the recipient. *See* 47 U.S.C. § 277(b)(1)(A), (B).

32.     A text message "qualifies as a 'call' within the compass of [the TCPA]." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[T]he FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A).").

33.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

34.     The Ninth Circuit has made clear that in order to qualify as an ATDS, the equipment must either "(1) store numbers to be called or (2) [] produce numbers to be called, using a random or sequential number generator—and to dial such numbers

automatically (even if the system must be turned on or triggered by a person)[.]" *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

35.   The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. In 2012, the FCC issued an order tightening the restrictions for automated advertisement or telemarketing calls, requiring "prior express *written* consent for all telephone calls using an automatic telephone dialing system . . . to deliver a telemarketing message to wireless numbers[.]" *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added). *See also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 1967 ¶ 4 (July 10, 2015) ("If the call includes or introduces an advertisement or constitutes telemarketing, consent must be in writing").

36.   Such "prior express written consent" for telemarketing calls using an ATDS requires that the recipient "(1) receive[] 'clear and conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the [recipient] will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, [the recipient] agrees unambiguously to receive such calls at a telephone number the [recipient] designates." *See id.* at 1844 ¶ 33. *See also* 47 C.F.R. § 64.1200(f)(8) ("The term *prior express written consent* means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system . . ., and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.").

37.   For calls that are deemed not to be an advertisement or telemarketing, a sender must nevertheless demonstrate that it obtained the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A); *In re Rules & Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 7991–992 ¶ 52 (July 10, 2015).

38.    The TCPA regulations promulgated by the FCC further define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 C.F.R. § 64.1200(f)(12).

39.    Additionally, the TCPA regulations promulgated by the FCC define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *See* 47 C.F.R. § 64.1200(f)(1).

40.    Whether a message constitutes telemarketing turns "not on the caller's characterization of the call, but on the purpose of the message." *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14098 ¶ 141 (July 3, 2003)). Calls motivated in part by the intent to sell property, goods, or services are considered "telemarketing" under the TCPA even when recipients are encouraged to purchase, rent, or invest in property, goods, or services in the future. *See Chesbro*, 705 F.3d at 918; *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14098 ¶ 142 (July 3, 2003).

41.    Recently, the FCC highlighted the relevancy of the TCPA noting that "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission" and noted that the TCPA and FCC rules are meant to "empower consumers to decide which robocalls and text messages they receive, with heightened protection to wireless consumers, for whom robocalls can be costly and particularly intrusive." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C.R. 7961, 7964 ¶ 1 (July 10, 2015).

42.   Additionally, the FCC reaffirmed its longstanding position that "text messages are subject to the same consumer protections under the TCPA as voice calls." *Id.* at 8017–18 ¶ 107.

43.   Notably, as recently articulated by the Ninth Circuit, "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients . . . [and] [a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis in original) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

***Texas Business and Commerce Code § 305, et seq.***

44.   The State of Texas provides an analogous protection for its residents against the dissemination of unsolicited and unconsented-to text messages.

45.   Texas Business and Commerce Code § 305.001 prohibits "any person from mak[ing] a telephone call or us[ing] an automatic dialing announcing device to make a telephone call for the purpose of making a sale if: (1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and (2) the called person has not consented[.]"

46.   Further, Texas Business and Commerce Code § 305.053 authorizes a private right of action for any "person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or" Texas Business and Commerce Code § 305.001.

47.   As such, a violation of the TCPA is a violation of Texas Business and Commerce Code.

48.   A prevailing plaintiff under the Code "is entitled to the greater of: (1) $500 for each violation; or (2) the plaintiff's actual damages." Tex. Bus. & Com. Code § 305.053(b)(1), (2).

49.   Like the TCPA, Texas Business and Commerce Code § 305.053 also authorizes the court to treble damages "[i]f the court finds that the defendant committed the violation knowingly or intentionally[.]"

***Defendants Violated the TCPA and Texas Business and Commerce Code § 305, et seq.***

50.   Plaintiff Wallace is, and was at all relevant times mentioned herein, the subscriber of a cellular telephone number ending in 2594 (the "2594 Number").

51.   Plaintiff Wallace's 2594 Number is, and was at all relevant times mentioned herein, assigned to a cellular telephone service within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

52.   On or about September 9, 2020 at 12:04pm, Plaintiff Wallace received the following advertisement and/or telemarketing text message from Defendants on his 2594 Number without providing his prior express written consent or prior express consent to Defendants:



53.   The hyperlinked URL in the above-depicted text message Plaintiff received re-directed to a website owned and operated by Defendants (www.lawsuit-winning.com) advertising free claim reviews for potential victims abused by the Boy Scouts of America,

which is one of Defendants' many lead generation websites "devoted to helping consumers who may have been injured[.]"

54.     Defendants' website is part of Admediary's "CaseClients" division devoted to generating legal leads and selling them to attorneys and law firms. *See, e.g.*, *Admediary Launches CaseClients for Personal Injury & Mass Tort Marketing*, PR Newswire (June 6, 2019), https://www.prnewswire.com/news-releases/admediary-launches-caseclients-for-personal-injury-and-mass-tort-marketing-300862897.html.

55.     According to Admediary's CaseClients website, Admediary owns and operates numerous websites, including Lawsuit Winning to which the hyperlinked URL leads, to "provide[] high converting, real-time legal leads to law firms across the US, generating between 7-10K leads per month." *See* CaseClients, www.caseclients.com/why-caseclients/ (last visited Sept. 28, 2020).

56.     The client leads come equipped "with an extensive amount of information to help [law firms] discuss the case quickly with [their] new client." Admediary also provides its legal sector customers that buy the client leads with "information or data points . . . that [law firms] can use as filters to narrow the exact cases [they] want to pursue and pay for" such as: "(1) are they completing the form for someone else?; (2) Do they already have a lawyer?; (3) Is it their fault?; (4) Details on the exact issue for their case; (5) Their contact information and location; and (6) And more.."

57.     Defendants' lead generation campaign in the legal sector through unsolicited and unconsented-to text messages, such as the text message received by Plaintiff, is merely one example of Defendants' overall customer acquisition business for its 30-plus owned and operated websites generating "tens of thousands of new leads *per day* through channels such as . . . text messaging."

58.     Defendants' text messages sent to Plaintiff, the Class members, and the Texas Subclass members constitute telemarketing under the TCPA and its regulations

because it encouraged the future "purchase or rental of, or investment in, . . . services," such as legal service. *See* 47 C.F.R. § 64.1200(f)(12).

59.     Further, Defendants' text messages sent to Plaintiff, the Class members, and the Texas Subclass members constitute an "advertisement" under the TCPA and its regulations because it is "advertising the commercial availability . . . of . . . services[,]" such as legal services. *Id.* at (f)(1).

60.     To be sure, Defendants' Lawsuit Winning owned and operated website found in the URL link Plaintiff received from Defendants makes abundantly clear—in all capital letters—that the website "IS AN ADVERTISEMENT."

61.     Indeed, Defendants' advertisement of legal services directly benefits themselves since one of their core business services is customer acquisition from lead generation through their owned and operated websites, such as Lawsuit Winning.

62.     At no point in time did Plaintiff provide Defendants with his prior express written consent to be contacted using an ATDS.

63.     At no point in time did Plaintiff even provide Defendants with his prior express consent to be contacted using an ATDS.

64.     All text messages sent from Defendants to Plaintiff's, the Class members', and the Texas Subclass members' cellular telephone numbers were sent using an ATDS as defined by 47 U.S.C. § 227(b)(1)(A).

65.     Defendants transmitted the above-referenced text message, as well as other text messages, to Plaintiff, the Class members, and the Texas Subclass members using "spoofed" ten-digit numbers containing virtually identical content leading to Defendants' Lawsuit Winning website, or other owned and operated websites, to generate business leads.

66.     Such text messages were sent by Defendants to Plaintiff, the Class members, and the Texas Subclass members *en masse* using the "spoofed" ten-digit long code short messaging service ("SMS") text messages in order to deceive Plaintiff, the Class

members, and the Texas Subclass members into believing that the text messages were personalized and sent from a legitimate telephone number operated by an individual.

67.    These ten-digit numbers, however, did not lead to a number operated by an individual.

68.    For example, a simple telephone call to the number appearing on Plaintiff's text message leads to a non-working number further corroborating that Defendants sent the text message through an ATDS using "spoofed" ten-digit numbers.

69.    Defendants' use of an ATDS is even further corroborated by the receipt of virtually identical text messages by numerous other Class and Subclass members at approximately the same dates and times, or close in proximation, (sometimes with similarly named URL links) as illustrated below:



1
2
3
4
5
6
7



8    70.    While Plaintiff, Class members, and Subclass members often received the

9  Defendants' unsolicited text messages from different ten-digit numbers, the content of

10  each text message was virtually identical (other than the inserted name and the exact URL

11  link).

12    71.    One day after Plaintiff's receipt of the text message from Defendants,

13  Defendants posted an advertisement on their Facebook page encouraging "#publishers

14  looking for High Performing Offers [to] check out [their] Top Performing Campaigns in

15  the Legal Space" and linking a page of Admediary's "*EXCLUSIVE Legal offers*"

16  including "Lawsuit Winning – Boy Scout Abuse" confirming that their Boy Scouts "Top

17  Performing Campaign" indeed involved the sending of "SMS" messages to recipients.

18  Other "SMS" campaigns advertised by Defendants included legal generation leads for

19  cases involving Belviq, Zantac, Elmiron, 3M Earplugs, and Talcum Powder.

20    72.    Defendants' use of an ATDS is further confirmed by Defendants'

21  hyperlinked Lawsuit Winning website itself, which requires an individual to consent to

22  being contacted "at the phone number [they] entered using automated technology

23  including recurring auto-dialers, pre-recorded messages, and text messages," as well as a

24  "Privacy Policy" containing an express "TCPA Consent."

25    73.    Despite such disclaimer on their website, Defendants failed to obtain prior

26  express written consent (or even prior express consent for that matter) from Plaintiff,

27  Class members, and Texas Subclass members *before* Defendants sent Plaintiff, Class

28

members, and Texas Subclass members unsolicited text messages connecting them to Defendants' owned and operated lead generation websites.

74.     Considering Admediary's representation on its website that it generates "tens of thousands of new leads per day through channels such as . . . text messaging" for their "owned and operated properties[,]" such as Lawsuit Winning, coupled with the fact that Plaintiff, Class members, and Texas Subclass members received virtually identical text messages at the same or similar dates and times, or close in proximation, Defendants could have only made such *en masse* text messaging possible through the use of an ATDS.

75.     As such, Defendants utilized a combination of hardware and software systems to send unsolicited and unconsented-to text messages to Plaintiff, Class members, and Texas Subclass members. Such systems utilized by Defendant have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and dial such numbers from a list without human intervention.

76.     Defendants were able to send hundreds or thousands of unsolicited text messages at approximately the same time on approximately the same dates through an ATDS without human intervention.

77.     Even if Defendant's technology required some level of human involvement to operate, this does not remove it from the definition of an ATDS. *See Marks*, 904 F.3d at 1052 ("We also reject [defendant]'s argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without *any* human intervention whatsoever. . . . Common sense indicates that human intervention of *some* sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions.") (emphasis added).

78.     Since Defendants violated the TCPA by sending Plaintiff and Class members unsolicited and unconsented-to text messages, Defendants have also violated Texas Business and Commerce Code § 350, *et seq.*, by sending Plaintiff and the Texas Subclass members unsolicited and unconsented-to text messages.

79.     As a result of Defendants' unsolicited text messages sent to Plaintiff, the Class members, and the Texas Subclass members through an ATDS without obtaining prior express written consent or prior express consent, Plaintiff, the Class members, and the Texas Subclass members have all suffered disrupted and diminished usage and enjoyment of their cellular telephones.

80.     For example, Defendants' unsolicited and unconsented-to text message took up memory on Plaintiff's cellular telephone and wasted his battery and cellular data.

81.     Further, Defendants' text message invaded Plaintiff's privacy, disturbed Plaintiff's solitude, and caused aggravation and lost time in dealing with the text message.

82.     Accordingly, Defendants are liable to Plaintiff and the Class under the TCPA and are liable to Plaintiff and the Texas Subclass under Texas Business and Commerce Code § 305, *et seq.*

### CLASS ACTION ALLEGATIONS

83.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

84.     Plaintiff brings this case on behalf of the nationwide TCPA Class and Texas Subclass defined as follows:

**TCPA Class**: All persons in the United States who, within four years prior to the filing of this action through the entry of judgment, received unsolicited text messages to their cellular telephones from Defendants through the use of an automated telephone dialing system(s), without providing Defendants with their prior express consent.

**Texas Subclass**: All persons in the State of Texas who, within four years prior to the filing of this action through the entry of judgment, received unsolicited text messages to their cellular telephones from Defendants through the use of an automated telephone dialing system(s), without providing Defendants with their prior express consent.

85.     The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

86.     Numerosity is met because the Class and Subclass size is believed to be over 40 members. While the exact number of members of the proposed Class and Subclass is unknown to Plaintiff at this time, the Class and Subclass size is believed to be substantial, consisting of thousands of individuals throughout the United States and State of Texas who received unsolicited text messages from Defendants without their prior express consent. Therefore, the Class and Subclass size is believed to be so numerous that joinder of all members is impracticable.

87.     Ascertainability is met as the exact number and identities of the Class and Subclass members are available from Defendants' call records.

88.     Common issues of law and fact exist as to all members of the Class and Subclass. Plaintiff, the Class members, and the Texas Subclass members all received unsolicited text message(s) from Defendants through the use of an ATDS without providing their prior express consent. The common issues of law and fact also include the following:

- Whether Defendants sent unsolicited text messages to Plaintiff's, Class members', and Texas Subclass members' cellular telephones;
- Whether Defendants used an ATDS to send such unsolicited text messages to Plaintiff's, Class members', and Texas Subclass members' cellular telephones;

- Whether Defendants' unsolicited text messages constitute an "advertisement" or "telemarketing" under the TCPA and its regulations;

- Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

- Whether Defendants' conduct was knowing and willful;

- Whether Defendants are liable for damages, including treble damages;

- Whether Defendants should be enjoined from such conduct in the future.

89.     These common questions of law and fact predominate over any questions affecting only individual members.

90.     Plaintiff's claims are typical of the claims of the Class members because the TCPA violation and resulting harm to Plaintiff is typical of that suffered by other Class members. Likewise, Plaintiff's claims are typical of the claims of the Texas Subclass because the Texas Business and Commerce Code violation and resulting harm to Plaintiff is typical of that suffered by other Texas Subclass members. Further, Plaintiff's claims are based on the same factual and legal theories of the Class and Subclass members.

91.     Plaintiff Wallace is able to fairly and adequately represent the interests of the Class and Subclass and has no interest antagonistic to the Class or Subclass.

92.     Plaintiffs' counsel is qualified and able to litigate the Plaintiff's, the Class members', and the Texas Subclass members' claims.

93.     Plaintiffs' counsel is experienced in class action cases.

94.     This class action is also maintainable under subsection (3) of Rule 23(b) because questions of law or fact common to Class and Subclass members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

95.     Alternatively, the questions of law and fact common to the Class and Subclass may be certified for class action treatment separately from any questions affecting only individual members under Rule 23(c)(4) because resolution of those

common questions will significantly advance the litigation.

## FIRST CAUSE OF ACTION

**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**

**(47 U.S.C. §§ 227 *et seq.*)**

**(On behalf of Plaintiff individually and the Class)**

96.     Plaintiff Wallace hereby re-alleges and incorporates the allegations set forth above.

97.     Plaintiff Wallace brings this claim individually and on behalf of all Class members for Defendants' violations of the TCPA.

98.     The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

99.     Defendants violated the TCPA by using an ATDS to send unsolicited and unconsented-to advertisement and/or telemarketing text messages to the cellular telephones of Plaintiff and the Class.

100.    The TCPA provides a private right of action authorizing a person to bring an "action based on a violation of th[e TCPA] . . . to enjoin such violation," and/or "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(A), (B).

101.    Additionally, the TCPA allows a court to treble the statutory damages if it "finds that the defendant willfully or knowingly violated" the TCPA. *Id.* at 227(c).

102.    Defendants violations alleged herein were willful and knowing violations of the TCPA.

103.    Because Defendant knew or should have known that their conduct violated the TCPA, and knew or should have known that Plaintiff and the Class members had not given prior express consent to receive text messages sent through an ATDS, the Court

should treble the amount of statutory damages available to Plaintiff and the Class members pursuant to 47 U.S.C. § 227(b)(3)(C).

104.   As a result of Defendants' willful violations of the TCPA, Plaintiff and the Class members are entitled to an award of $1,500 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B), (C).

105.   Alternatively, Defendants violations of the TCPA were negligent and Plaintiff and the Class members are entitled to an award of $500 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B).

106.   Defendants should also be enjoined from engaging in similar unlawful conduct in the future.

107.   Accordingly, Plaintiff and the Class members are entitled to all damages referenced herein, treble damages, injunctive relief, and any other relief under the TCPA or that the Court deems just and proper.

## SECOND CAUSE OF ACTION

## VIOLATION OF TEXAS BUSINESS AND COMMERCE CODE

### (Tex. Bus. & Com. Code § 305.053)

### (On behalf of Plaintiff individually and the Texas Subclass)

108.   Plaintiff Wallace hereby re-alleges and incorporates the allegations set forth above.

109.   Plaintiff Wallace brings this claim individually and on behalf of all Texas Subclass members for Defendants' violations of Texas Business and Commerce Code § 305.053.

110.   Texas Business and Commerce Code § 305.053 provides a private cause of action for any "person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or" Section 305.001 of the Code.

111.   Section 305.001 prohibits a person from making "a telephone call or us[ing] an automatic dialing device to make a telephone call for the purpose of making a sale if:

(1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and (2) the called person has not consented[.]"

112.   Texas Business and Commerce Code § 305.053(b) allows a prevailing plaintiff to recover "$500 for each violation; or the plaintiff's actual damages."

113.   Additionally, Texas Business and Commerce Code § 305.053(c) allows a court to treble the statutory damages if it "finds that the defendant committed the violation knowingly or intentionally[.]"

114.   As discussed above, Defendants violated the TCPA by using an ATDS to send unsolicited and unconsented-to advertisement and/or telemarketing text messages to the cellular telephones of Plaintiff and the Texas Subclass and therefore violated Texas Business & Commerce Code § 305.053.

115.   Because Defendant knew or should have known that their conduct violated Texas Business and Commerce Code § 305.053, and knew or should have known that Plaintiff and the Texas Subclass members had not given prior express consent to receive text messages sent through an ATDS in violation of the Code, the Court should treble the amount of statutory damages available to Plaintiff and the Class members pursuant to Texas Business and Commerce Code § 305.053(c)(1).

116.   As a result of Defendants' knowing and intentional violations of Texas Business and Commerce Code § 305.053, Plaintiff and the Class members are entitled to an award of $1,500 in statutory damages for each and every violation of the Code.

117.   Alternatively, Defendants violations of Texas Business and Commerce Code § 305.053 were negligent and Plaintiff and the Texas Subclass members are entitled to an award of $500 in statutory damages for each and every violation of the Code.

118.   Defendants should also be enjoined from engaging in similar unlawful conduct in the future.

119.    Accordingly, Plaintiff and the Class members are entitled to all damages referenced herein, treble damages, injunctive relief, and any other relief under Texas Business and Commerce Code § 305.053 or that the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Wallace, on behalf of himself and the Class, prays for relief as follows:

(a)    Determining that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Designating Plaintiff Wallace as class representative;

(c)    Awarding Plaintiff Wallace, as class representative, a service payment;

(d)    Designating Plaintiff's counsel as Class Counsel;

(e)    Declaring that Defendants violated the TCPA;

(f)    Declaring that Defendants violated Tex. Bus. & Com. Code § 305.053;

(g)    Issuing proper notice to the Class at Defendants' expense;

(h)    Declaring that Defendants acted willfully or knowingly in violating the TCPA;

(i)    Declaring that Defendants acted knowingly or intentionally in violating Tex. Bus. & Com. Code § 305.053;

(j)    An award of actual and statutory damages for Plaintiff and each member of the Class;

(k)    An award of statutory damages in the amount of $500 for each and every negligent violation of 47 U.S.C. § 227 *et seq.* for Plaintiff and each member of the Class;

(l)    An award of statutory damages in the amount of $1,500 for each and every willful and/or knowing violation of 47 U.S.C. § 227 *et seq.* for Plaintiff and each member of the Class;

(m)  An award of statutory damages in the amount of $500 for each and every negligent violation of Tex. Bus. & Com. Code § 305.053 for Plaintiff and each member of the Texas Subclass;

(n)  An award of statutory damages in the amount of $1,500 for each and every knowing or intentional violation of Tex. Bus. & Com. Code § 305.053 for Plaintiff and each member of the Texas Subclass;

(o)  A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

(p)  An injunction requiring Defendants to cease all unsolicited and unconsented-to text messaging activity, and to otherwise protect the interests of the Class and Texas Subclass;

(q)  An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining recipients' consent to receive calls made with such equipment; and

(k)  Such other and further legal or equitable relief as this Court deems to be just and appropriate.

## <u>JURY DEMAND</u>

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 8, 2020

/s/ Adam B. Wolf
Adam B. Wolf, Esq.
**PEIFFER WOLF CARR KANE & CONWAY, A PROFESSIONAL LAW CORPORATION**
5042 Wilshire Blvd., No. 304
Los Angeles, CA  90036
Telephone: (415) 766-3545
awolf@peifferwolf.com

**THOMAS & SOLOMON LLP**
J. Nelson Thomas, Esq. (to be admitted *pro hac vice*)
Michael J. Lingle, Esq. (to be admitted *pro hac vice*)
Conor T. Tallet, Esq. (to be admitted *pro hac vice*)
693 East Ave.
Rochester, NY 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
ctallet@theemploymentattorneys.com

*Attorneys for Plaintiff*